Laetitia O. Blittle v. City of Chicago All right, would counselors who are going to argue this matter please step up to the podium. Identify yourselves for the record and what party you represent, please. Just keep in mind the microphone just records, it doesn't amplify. Okay. Good morning, my name is Elizabeth Bartolucci and I represent the plaintiffs Appellants Laetitia and Reginald Blittle. My name is Aya Barnea and I represent the City of Chicago and Officer Gloria Tirado of the Appellees. Okay, so 15 minutes apiece. You want time for rebuttal? Yes, please, Your Honor. How much? Five minutes? Okay. All right. You may proceed. Thank you. May it please the court, counsel, I'll begin with the well-accepted and established standard of review the court has to apply, which is that a jury's verdict may be set aside in a new trial order where the amount of damages awarded is palpably inadequate or against the manifest way of the evidence or the jury has clearly disregarded a proven element of damages. Let me ask you a question. Do we have a transcript with regards to the proceedings where the circuit court considered and denied the jury request for additional copies? My Honor, that is addressed in the party briefs. There was a court reporter present, and unfortunately, due to reasons we do not know, the court reporter did not capture that exchange. So immediately recognizing that, Plaintiff's Trial Counsel prepared an affidavit, well, in the post-trial proceedings. He recognized that. That was Mr. Montgomery's declaration about the trial court's reasoning. Correct, Your Honor. And he, why do you believe that that was sufficient in this situation? Well, Your Honor, it's, you know, we have not reached the stage of an appeal yet. So it would not appear that the Supreme Court rules for bystander reports necessarily were triggered or implicated at that point. And he did, however, recognize the need to create a circuit court record, a trial court record of the court's rationale for her rulings. And so he submitted the affidavit, the declaration, as you correctly stated, indicating what transpired when the jury did request those documents and the court's rationale for denying the request. Was there ever an attempt to try to obtain a bystander's report or agreed statement of facts? There was not in this case, Your Honor, because it appeared to the parties that Mr. Montgomery's recitation of what transpired and the trial court's rationale was accepted by the defense. There was briefing on the court's rationale. Is there anything to that indication, any written document that we could look at? They did not file anything such as a stipulation saying we agree with Mr. Montgomery's statement of what occurred. But they did have eight months between the date Mr. Montgomery filed that declaration and the hearing on the post-trial motion before the new judge to refute anything he stated if they felt it was not accurate. And also, as you might recall, the trial judge did initially hear the post-trial motion and there was no indication by her that she disagreed with any of the contents of Mr. Montgomery's declaration. And did defense counsel object to it at that hearing on the post-trial motion? Well, there is no record, transcript of that hearing, but we indicated that they did not and have never refuted that contention. So defense has made no record whatsoever that they disagreed with Mr. Montgomery's statements. So as the appeal began, it appeared that a record had been created on the judge's rationale and that that should suffice. And as we noted, it's rather late in the day when the appellants file their opening brief to say the record is insufficient. Defendants have the obligation and the opportunity under Supreme Court Rule 323 to supplement the record if needed and they never took steps to do that or to ask us to supplement the record and they never did. So there were multiple indications at multiple points in the lower court proceedings that the defense accepted Mr. Montgomery's recitation of the trial court's rationale. And in fact, as we noted in defendant's appellee brief, they even adopted some of the judge's rationale that she provided regarding not wanting to submit redacted documents to the jury. So we feel there are multiple points where the defense has accepted Mr. Montgomery's statement of what occurred and in fact adopted his statement of the court's rationale in making her rulings. So regarding the award, how do we know that the award of roughly $2.5 million did not include the $770,000 past expenses? Well, Your Honor, we think the indicia of that are the fact that the jury specifically requested Dr. Stan Smith's economic report and, you know, very reasonably, we weren't asking to submit his thicker initial report. We asked to submit a three-page document. And even when we wrote that down, the last page of his report contained a summary of the damages he accounted for. And by he, you're referring to Dr. Smith. Pardon? Dr. Smith is that it? Dr. Smith prepared a summary of losses as the last page of his supplemental report. So Plans Council offered to submit just that one page to the jury, not even a three-page letter sort of giving explanation of why the doctor prepared a supplemental report. So we were asking only to submit one page, which is a summary of the losses Dr. Smith calculated. So the jury's request for that report, we think, is a strong indication that they needed to review the numbers. And also the jury's request for Plans' proposed verdict form, including its breakdown of eight different categories of damages between two plaintiffs that were being sought, are strong indications. And you could see, it's very heartwarming to see how diligent this jury was, as a matter of fact. You could see in the record, I don't know if you had the opportunity to review these exact documents, but we cite them, the jury's handwritten notes where they attempted to, you know, shorthand every element of damages Plans were seeking and really were trying to be very diligent in keeping track of the damage elements, but they wanted to see the proposed verdict form to confirm their numbers. And the fact that, you know, I noticed that the... One question in regards to how detailed they were. I did notice that they ignored the household services. They put a zero by that request. Yes, Your Honor, and that... So does that mean that the jury didn't want to award those damages? Well, we don't interpret it that way, Your Honor, because that is one of the key damages elements, again, that was contained in Dr. Smith's report. Dr. Smith is the expert witness who testified on the value of household services, and his report was the only document that contained, you know, a monetization. How would you explain the zero, then, by that request? I would assume that the jury, you know, they asked for the breakdown in two different forms, Dr. Smith's report and Plaintiff's proposed verdict form, and I would interpret that as the jury preferring to err on the side of caution and not giving damages award that they think may have been included in some other category of damages that Dr. Smith calculated or that Plaintiff requested. Plaintiff did request Mr. Little requested loss of consortium damages, and potentially the jury was confused and believed that those could be incorporated with the household services damages. Those are your assumptions, though, right? We don't have anything to indicate that they were confused. Well, the fact that they asked for these two documents, we think, does indicate your confusion. I mean, they asked for the two specific documents that would tell them what loss of household service damages Plaintiffs were seeking. Those were the only documents that contained those numbers, and the Plaintiffs requested both of them. So we think there's a strong indication, you know, Dr. Smith's summary report was not massive. It wasn't detailed. It had three categories of damages, and the loss of household services was one of them, and that was the only place where that number would have appeared other than on the proposed verdict form. And Dr. Smith got to testify in this trial, correct? Yes, he did. And then the information that was contained in his report was part of his verbal testimony to the jury? Yes, yes. As you know, there was testimony from him, and we acknowledge that the evidence got out. Defendants have never contended that we did not prove these damage elements, which is important to note. They have never said these damage elements were proven, there was no evidence of them, so it was appropriate not to let the jury see a proposed verdict form, you know, that asked for damages that had not been established. So they were given the opportunity to take notes, but I guess your position is that the jury didn't necessarily record all of the areas of potential damages or your suggested sums for those damages. Yes, because it is noteworthy that this trial, I mean, liability was disputed, but the bulk of the trial was spent on the damages elements. So this jury saw, I don't know if you saw the list of exhibits, the table of contents of the record of appeal. Well, there were thousands of documents presented on damages and many, many experts on damages. So, you know, we think it's very reasonable that the jury would have wanted, you know, a very, very precise document summarizing what Dr. Smith's testimony was on this precise damages element. I know that a lot of it was based on damages, and I have a question about liability. You seem to concede the finding of liability, the 25 percent contributory negligence versus the 75 percent due to willful and wanton conduct. And my question for you, was there any sort of finding of intentional behavior versus mere recklessness? I don't believe so. I think, hearkening back to my early defense days in personal injury cases, that contributory negligence can't be an offset on any intentional, willful, and wanton conduct. And, but you seem to already concede that, so perhaps we can't even consider it. But, Laura, I agree with that, and that is an issue I look into right away. As you likely know, willful and wanton conduct can be deemed reckless conduct or it can be intentional. And here, it appears that the finding was, it was willful and wanton in the reckless category and not intentional. So I agree with you that if the conduct of the defendant had been found to be intentional, Ms. Little's contributory negligence could not have offset that, could not have been a defense to that. So if I understand correctly, in your request in the briefs, you're not looking for a new trial on the liability, you're just looking for a new trial on the damages. Correct. And I will say we concede that she was 25 percent contributory negligent. And I think that's a rather high apportionment, given that she was proceeding on a green light very carefully and cautiously, but the plaintiff did not want a new trial on all issues and decided to narrow it to the damages issues. Getting back to the expenses, do you think all of the expenses reflected in Dr. Merritt's life care plan were warranted? For example, a request was made for paying for gym membership when she already had a gym membership. So why did we need to have that in there? Well, the fact that she had a gym membership doesn't mean it was inappropriate to consider her ongoing future need to exercise. I think the important thing about Dr. Merritt's life care plan is it contemplates what Ms. Little will need until she dies, until she's 85 years old. And so while she's a young, fit woman now, relatively speaking, and she had a gym membership, part of the reason she goes to the gym still and probably will continue going to the gym is that she needs to rehabilitate her body. She needs to keep her back strong. She has very serious injuries. She has a spinal fusion in her back that is unquestionably going to lead to some issues as she gets older, degenerative arthritis being one of them. So, yes, I do think the gym membership is warranted. And, you know, I do think that Dr. Merritt, who's an expert in these categories or in these topics, certainly justified the need for all the services and equipment that he mentioned. Also, to answer directly your question of how do we know that the $770,000 in past medical expenses was not included in the jury's award, I think the remarkable closeness of the numbers, you know, the amount awarded by the jury to Dr. Merritt's life care estimates, as calculated by Dr. Smith, is really telling. I mean, it's, as we noted, about $1,700 off. But I'll also note that Cliff requested $810,191 in lost wages, so $810,000, and the jury awarded her $889,000. So there was no basis, really, for the jury to go over the lost wages that Dr. Smith calculated for her. So they made a mistake because they didn't have the proposed verdict form and they didn't have Dr. Smith's report in front of them. So there were slight mathematical errors by the jury because they didn't have the two documents they requested. And if they had been given the two documents they requested, the minor errors wouldn't have occurred and the larger errors of omitting clearly proven, essentially liquidated damages wouldn't have occurred. We think that, you know, the appeal could have been obviated, and there really was no rational basis for not giving the jury these documents. The trial judge's original rationale regarding Dr. Smith's report was that the parties were not going to pursue impairment of future wages because when he wrote his report, he wasn't sure whether Ms. Little would be able to continue working at that point or in the future. It was then decided she could continue working to a degree, a lesser degree, more restricted duty, but she could. So a category of those damages was not going to be sought. But it would have been placed... You don't have time for rebuttal. Okay. Do you want to sum up and then go to the other side? I just do think that the remarkable closeness in the award the jury gave for medical expenses is so similar to the amount Dr. Merritt recommended that it would have... It indicates their intent to award those damages, but their lack of the ability to review Plante's proposed verdict form and Dr. Smith's report resulted in their inadvertent omission of her proven past medical expenses and her need for a future potential spinal fusion. Thank you. Thank you. All right. So let me ask you, is there any information in Mr. Montgomery's declaration regarding the jury questions that is incorrect, to the best of your knowledge? Well, we don't have a transcript or a report of proceedings. No, I'm just talking about the declaration. The actual declaration? Yes. I mean, I don't have any basis in the record to think that it is incorrect, but as a matter of procedure, that's not a document that can be considered. Rule 323 plainly spells out what to do if there's a missing transcript. It's either a bystander's report or an agreed statement of facts. But does that matter that that was being used in a post-trial motion, a hearing on a post-trial motion versus on an appeal? Well, I think that what matters for this Court is whether that's a document that can be considered. I mean, we have an issue that there's no transcript, and Rule 323 sets out what to do when there's no transcript, and the declaration doesn't meet the requirements. Did you object to it? Did your client object to it at a hearing in the post-trial motion? No. The record doesn't reflect that my client objected. However, the declaration was a permit. You know they're arguing that because a period of eight months passed by, right?  And nothing was filed contrary. Right. No objections were submitted. There was no counteraffidavits provided to the Court. So they're saying, well, by then, you just basically acquiesced to the declaration. Or would it operate as a forfeiture before this Court? I don't think that a voucher issue is something that can be forfeited because there are, again, like I said, there are rules about what kind of documents can be considered on appeal, and the declaration doesn't meet the requirements for what this Court can consider. And also the – Why is this a voucher? Because there's no record of the discussion and the ruling. But does a voucher also say that the public court, the court of review, can take a look at what's presented and still make a determination? Absolutely. And I think that the rest of the record confirms that the trial court's denial of the jury's request is not an abuse of discretion here. Was the trial judge even still available to certify a bystander's report, or had she already retired? She retired. And I think by the time that the post-trial motion – So that wouldn't even have been an available remedy. No, there still could have been an agreed statement. Agreed statement. Yes, which would have required a written stipulation between the parties. How was the information regarding the damages presented to the jury? Was it verbal? Was it on a, you know, dry-ease board? Sure. Was it on a computer screen? How was it – was it presented as well visually as well as orally? It was. So the damages were – it was two things. Based on the record, plaintiff's counsel went over in detail all of the elements of damages. And I just also want to point out that we're really only talking about three claim costs on appeal. So Ms. Little's past medical expenses, the cost of a future spinal fusion, and Mr. Little's loss of Ms. Little's household services. And each of those was spelled out multiple times, multiple ways throughout the trial and in closing argument. As to the past medical expenses of $770,000, there was a witness, Jose Molina, who testified those were Ms. Little's past medical bills. And then in closing argument, plaintiff's counsel stated it, put it up. The record doesn't reflect exactly what the format was, but did display a filled-in verdict form and explained that the past and future medical expenses should include that amount. And then defendant's counsel also mentioned the $770,000 figure twice in their own closing argument. So it seems impossible that the jury would have forgotten or that the award does not include that amount given the number of times it was repeated. At trial, though, in what way did your client dispute plaintiff's proof of damages for the loss of household services? It seems really inconsistent to me that the jury would find that loss of companionship and what we used to call loss of consortium and not find loss of household services by the same person with the same injuries. Well, I think there was different evidence presented here on those two issues. So the jury, so Dr. Smith was the expert that testified about the value of Ms. Little's household services. And it's our position that the jury's award of zero reflects a finding that Mr. Little was not entitled to that loss. But you agree that Illinois law allows damages in that category. Yes. So how could the jury have concluded that he wasn't entitled to that loss? Well, the jury was entitled to reject Dr. Smith's testimony about the value of the loss. The jury is entitled to reject expert testimony even when it's given in absolute terms. The jury did not have to believe the information that Ms. Little gave to Dr. Smith about what she was able to do. And the jury did not have to believe Mr. Little's testimony about what he did in light of the fact that he also testified that there were three other adults in the home when Ms. Little returned or three adults total in the home when Ms. Little returned from rehab. Could have found that he didn't provide, your point, didn't provide any evidence at all to dispute those things. Well, I think cross-examination and the jury's own assessment is also of credibility and the evidence presented is also, can also factor into the jury's overall calculus. We didn't need to put on an expert. We cross-examined Dr. Merritt on specifically the household services and his methodology. And the jury was entitled to draw its own conclusions. Mr. Little also didn't provide specifics about what exactly he did, how much time he spent. So the jury could take that into consideration. They saw Mr. Little testify, they saw Ms. Little testify, and they could form their own conclusions. That's exactly what we ask juries to do, is assess all of the evidence and come to an answer. And given the way that household services was emphasized throughout trial and then mentioned specifically in closing argument, it seems highly unlikely that the jury forgot about it. It was a separate entry on the verdict form. And I think the jury made a choice and there was evidence to support it. So going back to Smith, I mean, the jury did specifically say, the question to the judge, we would like to see the economist's report, economist Dan Smith's report, they even mentioned in Plaintiff's Exhibit 63, supplemental summary of laws for L. Little. Thank you. So wouldn't it have been more, how should I say it, appropriate or advisable to allow the plaintiff's proposed verdict form to be provided to the jurors? The proposed verdict form was argument. It wasn't evidence. And if it's not admitted into evidence, it's not error for the judge to deny it. What about Dr. Smith's report? Dr. Smith's report. Well, the jury could have reasonably concluded that was cumulative. But they were asking to look at it. They specifically said, we want to see his report and the supplemental report. And for whatever reason, we don't know why, but the trial judge just said, you've got all the evidence you need in the law. Right. Move forward. Nothing with mathematical calculations was sent back. And it's not an abuse of discretion in this case to have rejected it. There was the cost at issue, including the household services, was crystal clear throughout trial. And the judge could have determined reasonably that the jury did not need more, need to have the amount. The jury was able to fill out the verdict form and knew it. But they're arguing that it might have been a mistake. Right. I think on this record it's not a mistake because there's evidence to support the award. They were able to fill out every single category. It seems inconceivable that the jury would have forgotten that this was something that plaintiffs were asking for. There was testimony about it. There was an expert who testified about it at length. That expert was cross-examined by defendants, and that number was asked for in closing argument. So I'll ask you the same question I asked counsel. The $770,000, do you think it was included in the 2.5? Yes. What could you show us that would make us be able to come to that same conclusion? So it's the number of times that that number was repeated. The jury knew that that was awarded defendants in closing argument. I believe said if you find in Ms. Little's favor on liability, the 770 is an element of damages that should be included. Ms. Little was awarded $2.5 million for her past and future medical expenses. 770 is much smaller than that, and it leaves plenty of damages for her future needs as well. Did you forfeit your right to argue here that you didn't consent to an editor and that the plaintiffs didn't satisfy the requirements for that relief since you didn't make those arguments to the trial court? No, that's not forfeited. Why not? Because we did not, we objected to any increase in the award. We did not agree that that was a remedy that should be applied here. We objected to any increase in the award. And editor is also not available because the damages are disputed. Editor is when there's a set amount of damages. This is exactly how much the plaintiff is owed for this breach. But in this case, we've been arguing about damages. Editor is not available. There's evidence to support that Mr. Little would not be entitled to the loss of household services. Is there anything else? I think in terms of Ms. Little's, the household, sorry, the loss of household services was a past and future award. I just want, that was what plaintiffs were asking for. The jury could have also credited testimony about Ms. Little's improvement, that she was able to go to the gym. She was, she told Dr. Merritt that she could lift light weights. She regained a lot of her functionality. She was responding well to the conservative, more conservative treatments that were being offered by Dr. Morker. That also supports an award, a finding that there would be no loss of household services in the future. Okay. And if there's no other questions, we ask that the judgment be affirmed. Okay. Thank you. Thank you. Yes, thank you, Your Honor. I'll just go to some of the points counsel responded to. First, on the question of forfeiting the editor argument, I do believe they did forfeit any argument against the editor. She's kind of generically just said we opposed an increase in the award. Well, they opposed our post-trial motion, but they did not make any specific argument about editor. And we think the trial judge had an obligation to inquire whether they might consent to editor. So that still is an option today. And we do think they forfeited their argument in that regard. And also, as we've pointed out in our brief, counsel misstates the standard for editor. It is not impermissible if damages are disputed. It's impermissible if a jury has to make credibility determinations if there's conflicting evidence on damages. Here, there was no conflicting evidence presented by the defense on the damages that we were seeking. It was not a credibility determination in that respect. There weren't competing experts. So the rule that the plaintiff cites about editor not being appropriate is not correct. It's not disallowed when damages are disputed. It's disallowed when there are competing experts. And all the case law addressing that has that, competing experts. That was not this case. There were no competing experts. Finally, counsel mentions the fact that the jury heard the $770,000 figure multiple times. They could not possibly have forgotten it. Well, we don't claim the jury forgot the $770,000 in past medical expenses, but we do contend that they became confused and that they overlooked it in making their damages award because they did not have the plaintiff's proposed verdict form, and they did not know whether that number was included in Dr. Merritt's report, which is an important point. Dr. Merritt's report discussed a lot of Ms. Little's medical needs, but it specifically did not include the $770,000 in past medical expenses because he just looks forward to her future life care needs. And it did not include her $200,000 in future surgery needs. So it's very reasonable for a jury who's not well-versed in these concepts of life care plans and past and present medical damages to need to see, was that $770,000 included in that $2.5 million figure? And they weren't allowed to do that. So we don't dispute that the jury heard the number a lot because the defendants essentially conceded those damages had been proven by plaintiffs. They said, if you're going to award any damages to plaintiffs, give them their hard numbers of $770,000 in past medical expenses. So the defense has essentially conceded that amount was proven, but the jury didn't know if that number was included in the amount that was suggested by the plaintiffs or Dr. Merritt's report. So we do think they overlooked it in that sense and in the sense that's under the case law. And then finally, as far as Mr. Little's future household service needs, the defense counsel keeps referring to the fact that there were multiple adults in the home after Ms. Little was injured. Well, Dr. Smith's report is from that point forward. He didn't look at what Mr. Little incurred in the past in household needs. And, in fact, defense counsel even made an objection at trial at the record 632, R632, where they made an objection about the amounts and the time frame of those damages. And defense counsel said, I think the inquiry today is for losses going forward. So that was the focus of Dr. Smith's evaluation of the loss of household services. So the fact that some family members came in and helped them immediately after the accident is not a factor here. It's not what Dr. Smith considered. He's looking at what this couple will need until Ms. Little is 85 years old. And there's no question when a spouse is incapacitated and unable to perform the same household services she performed before, that the husband will suffer losses. He will either lose his own time. He will have to. He's going to get old, too. He's going to have to hire people to help around the house. And those are absolutely compensable damages under Illinois law. So we would ask that the court affirm the liability verdict of the jury and the judgment and reverse the damages that we have challenged here today, being Ms. Little's past and future life care needs and medical expenses, her need for a future spinal fusion, and reverse for a new trial on those damages elements, and also potentially give the defense the option to agree to an editor, particularly on Mr. Little's loss of the value of Ms. Little's household services. Okay. Thank you. Thank you very much. Thank you. All right. Thank you, counsels. For a well-argued matter, this court will take it under advisement.